IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOI
EASTERN DIVISION

| | |
|---|---|
| MILDRED PERSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) Case No. 201-CV-3017 |
| v. | ) |
| | ) |
| WILMINGTON SAVINGS FUND | ) |
| SOCIETY, FSB, D/B/A CHRISTIANA | ) |
| TRUST AS TRUSTEE FOR PNPMS | ) |
| TRUST II, STATEBRIDGE COMPANY, | ) |
| LLC and DIAZ ANSELMO LINDBERG, | ) |
| LLC | ) |

## COMPLAINT

**NOW COMES** the Plaintiff, Mildred Person ("Plaintiff"), by and through her undersigned attorneys, and files her Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq*. (the "FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") against Defendants, Wilmington Savings Fund Society, FSB, d/b/a/ Christiana Trust as Trustee for PNPMS Trust II ("Wilmington"), Statebridge Company, LLC ("Statebridge") and Diaz Anselmo Lindberg, LLC ("Diaz Anselmo" and together with Wilmington and Statebridge, the "Defendants"), and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action for damages and to secure redress for unlawful debt collection practices conducted by Statebridge and Diaz Anselmo and for unfair and deceptive conduct by all Defendants.

2. Diaz Anselmo, a debt collector, as an agent of Statebridge, a loan servicer, filed a foreclosure action against Plaintiff in an attempt to collect a debt, allegedly owned by Wilmington, that was barred by Illinois law.

3. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts.

4. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

5. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

6. The FDCPA encourages consumers, through counsel, to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

7. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C.§1692 *et seq*.

8. For its part, Wilmington, who alleged in its complaint for foreclosure that it owned commercial paper secured by real property in Illinois, has failed to provide any evidence that it is the legal owner of Plaintiff's loan and has failed to provide the chain of title from the original lender to Wilmington. Even if Wilmington is the holder of Plaintiff's loan, Wilmington

owns nothing more than an unenforceable, unwritten contract that became unenforceable long before it allegedly accepted an assignment of Plaintiff's mortgage.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as this case is brought pursuant to the FDCPA.

10. Personal jurisdiction and venue are proper in this district because BNL is a resident of Illinois and the conduct at issue occurred in this district.

## PARTIES

11. Plaintiff, Mildred Person, is a resident of the State of Illinois, from whom Statebridge and Diaz Anselmo attempted to collect allegedly late mortgage payments. Plaintiff is thus a consumer as the term is defined in 15 U.S.C. §1692a(3) of the FDCPA. On or about July 13, 2005, Plaintiff entered into that certain American General Home Equity Line of Credit Agreement (the "HELOC") with American General Financial Servicesof Illinois, Inc. The HELOC was secured by a second-priority security interest in Plaintiff's primary residence (the "Property"), which was evidenced by an Open-End Mortgage (the "Open-End Mortgage") of the same date. The debt evidence by the HELOC and the Mortgage was thus incurred for personal, family or household purposes. Plaintiff is thus a consumer as those terms are defined under the FDCPA and ICFA.

12. Wilmington is a Delaware financial services company that conducts business within the State of Illinois.

13. Statebridge is a Colorado limited liability company that conducts business within the State of Illinois and as a debt collector as defined by §1692(a)(6) of the FDCPA, because it

regularly uses the mails and/or telephone to collect, or attempt to collect, delinquent consumer debts. Statebridge is the loan servicer who services the subject loan on behalf of Wilmington.

14. Diaz Anselmo Lindberg, LLC is an Illinois limited liability company that acts as a debt collector as defined by §1692(a)(6) of the FDCPA, because it regularly uses the mails and/or telephone to collect, or attempt to collect, delinquent consumer debts.

## BACKGROUND FACTS

A. *Plaintiff's Loan, HELOC and Open-End Mortgage*:

15. On or about July 13, 2005, Plaintiff entered into the HELOC for personal, family and household services. A true and correct copy of the HELOC is attached hereto as Exhibit A.

16. The HELOC is a revolving line of credit which does not obligate the Plaintiff to borrow anything. *Id.*

17. Rather, the Plaintiff could borrow nothing, or up to the credit limit of $10,543.00, or any amount in between. *Id.*

18. The only way to determine the amount to be repaid, if anything, is by looking at parol evidence, and specifically, the Periodic Statements that would be sent by the lender or its agent, in this case Statebridge, if "(1) Lender charges a Finance Charge; (2) Lender charges a Fee; (3) there is any other activity on my Account; or (4) the law requires that lender send me a Monthly Statement." *Id.*

19. The HELOC does not have a specified maturity date. *Id.*

20. Instead, the HELOC contains a complicated payment schedule that regularly fluctuated based on factors unrelated to the alleged outstanding debt and accrued interest, which would amortize over an "Assumed Term" of five years, but was not required to be paid upon the expiration of five years.

21. The open-ended term of the HELOC is confirmed by the Open-End Mortgage which served as the security instrument for the HELOC. A true and correct copy of the Open-End Mortgage is attached hereto as Exhibit B. The Open-End Mortgage does not have a maturity date or any indication of the expiration of the security interest evidenced by the Open-End Mortgage except a reference back to the HELOC. Exhibit B, at p. 1 ("This debt is evidenced by Borrower's [HELOC] dated the same date as this Security Instrument ('Note'), which provides for monthly payments, with the full debt, if not paid earlier, due and payable as provided in the Note").

22. Further, the default provisions of the HELOC are *ipso fact* and do not require a declaration of default of notice of any kind by the lender.

23. Specifically, the HELOC states in pertinent part "[t]o the extent permitted by applicable law, I will be in default of this Agreement if: (a) I file for, or my creditors place me in, bankruptcy and I fail to meet the repayment terms of this Agreement; or (b) I do not make any Minimum Payment by the Payment Due Date or otherwise fail to meet the repayment terms provided for in this Agreement…, or (d) Any action or inaction by me adversely affects Lender's Security Interest in the Property, for example:…(viii) the Property is foreclosed upon by another lien holder" *Id.* at ¶15.

    **B.**     ***Plaintiff's Prior Foreclosure Case and Bankruptcy:***

24. On August 22, 2011, Plaintiff's former lender, MidFirst Bank, initiated foreclosure proceedings against Plaintiff in the Circuit Cook of Cook County, Illinois in a case styled *MidFirst Bank v. Person*, Case No. 2011-CH-29717 seeking to foreclose its first lien security interest in the Property.

25. On October 14, 2011, Ms. Person filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Case").

26. On February 2, 2012, Springleaf Financial Services of Indiana, Inc. f/k/a American General Financial Services filed a proof of claim (the "Proof of Claim") in the Bankruptcy Case. A true and correct copy of the Proof of Claim is attached hereto as Exhibit C.

27. The Proof of Claim alleges that Plaintiff owed a past due balance of $17,166.37 and had not made a payment on the HELOC since March 3, 2008. Proof of Claim, at pp. 1 & 4.

28. On April 19, 2012, the Proof of Claim was amended to allege that the interest rate on the HELOC at the time of filing was 0.00%. A true and correct copy of the Amended Proof of Claim is attached hereto as Exhibit D.

29. On October 24, 2013, LVNV Funding LLC ("LVNV") filed a notice of transfer of claim (the "Claim Transfer") related to the Proof of Claim and Amended Proof of Claim in Plaintiff's Bankruptcy Case. A true and correct copy of the Claim Transfer is attached hereto as Exhibit E. LVNV attached a Bill of Sale and Assignment of Accounts dated June 7, 2013 (the "Bill of Sale") to the Claim Transfer alleging that the HELOC and Open-End Mortgage had been assigned to LVNV. Attached to the Bill of Sale was a reference to a "Transfer Group" and "Portfolio" evidencing a bulk assignment with waivers of notice.

30. On March 12, 2012, Plaintiff's Chapter 13 Plan was confirmed by the Bankruptcy Court.

31. On January 13, 2015, the chapter 13 trustee (the "Chapter 13 Trustee") filed his Chapter 13 Standing Trustee's Final Report and Account (the "First Final Account"). A true and correct copy of the First Final Account is attached hereto as Exhibit F.

32. The First Final Account reflects that LVNV, the alleged owner of the HELOC at the time, received $0.00 in plan payments from Plaintiff's Bankruptcy Case. First Final Account, at p. 2.

33. Thereafter, the Plaintiff's Bankruptcy Case was converted from a Chapter 13 to Chapter 7.

34. On April 23, 2015, the Bankruptcy Docket reflects a Minute Entry from Neville Reid, the "duly appointed chapter 7 trustee" stating that he had "neither received any property nor paid any monies on account of this estate." [Bankruptcy ECF No. 83].

35. On August 17, 2015, the chapter 13 trustee filed a second Final Report and Account (the "Second Final Account"). A true and correct copy of the Second Final Account is attached hereto as Exhibit G. The Second Final Account reflects no distribution to any creditor, including LVNV.

36. On August 18, 2015, the Bankruptcy Case was closed.

**C.      *The Commencement of the Foreclosure Action*:**

37. On February 22, 2021, Wilmington commenced the foreclosure action against Plaintiff seeking to foreclose upon the Property vis-à-vis the Open-End Mortgage. A true and correct copy of the Foreclosure Complaint is attached hereto as Exhibit H.

38. The Complaint states falsely that the "loan is due for the June 29, 2014 payment." *Id.*

39. The Complaint fails to allege that Plaintiff has not made a payment on the HELOC or the Open-End Mortgage since March 3, 2008. *Id.*

40. The Complaint states that it seeks a deficiency judgment against Plaintiff. *Id.*

7

41. The Complaint states "the current mortgagee is Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Trustee for PNPMS Trust II. Plaintiff is the holder of the indebtedness based on the attached Note which has been duly endorsed and which is incorporated herein by reference."

    **D.**     *Alleged Assignment of Plaintiff's Loan to Wilmington*:

42. In an undated Allonge, Wilmington claims to have taken ownership of the HELOC. A true and correct copy of the Allonge is attached to the Complaint as <u>Exhibit I</u>.

43. The Allonge is allegedly signed by "PYOD LLC, SUCCESSOR IN INTEREST TO ONEMAIN FINANCIAL SERVICES, INC., FORMERLY KNOWN AS SPRINGLEAF FINANCIAL SERVICES, INC., SUCCESSOR IN INTEREST TO AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC., By Real Time Resolutions Inc as Attorney In Fact." *Id.*

44. It bears repeating that Springleaf transferred the HELOC to LVNV over the course of Plaintiff's Bankruptcy Case and therefore could not have been the holder of the HELOC when Wilmington claims it succeeded to the interest of Wilmington.

45. Wilmington filed the Foreclosure Complaint without providing a complete chain of title to the HELOC or Open-End Mortgage.

46. There is no evidence whatsoever that Wilmington is the legal holder of the HELOC or the Open-End Mortgage and entitled to any payment not barred by Illinois law.

    **E.**     *The Statute of Limitations*:

47. Illinois law precludes an alleged note holder, such as Wilmington, from foreclosing on a mortgage when an action on the underlying note is barred by the statute of limitations or another procedural rule. *See, e.g., Hibernian Banking Ass'n v. Commercial Nat.*

*Bank*, 157 Ill. 524 (Ill. 1895) ("[I]t has been repeatedly decided by this court that the mortgage is a mere incident of the debt, and is barred when the debt it barred[.]"); *see also* Dale Joseph Gilsinger, Annotation, *Survival of Creditor's Rights Created by Mortgage or Deed of Trust as Affected by Running of Limitation Period for Action on Underlying Note*, 36 A.L.R. 6th 387 (2008); *United Central Bank v. KMWC 845, Ltd. liability Co.*, 800 F.3d 307, 311 (7th Cir. 2015).

48. Wilmington's action on the subject HELOC, however, is barred by the five-year statute of limitations, 735 ILCS 5/13-205, because the HELOC sued upon is not a "written contract" for purposes of the ten-year Illinois statute of limitation, 735 ILCS 5/13-205. The Illinois Supreme Court has held that a "written contract" is one wholly in writing, so that all material terms of the parties' agreement be contained in the writing.

49. Here, the amount of credit used cannot be determined from the HELOC itself, the repayment terms are subject to change by notice, and the agreement is expressly subject to change by the lender, just as in the case of an ordinary, unsecured credit card. Plaintiff's claim under the HELOC is therefore governed by the five-year Illinois statute of limitations, 735 ILCS 5/13-205, which expired prior to the filing of this lawsuit.

50. If a claim on the HELOC is barred, so is this lawsuit for foreclosure. As discussed below, the Foreclosure Action seeks damages for breach of the HELOC. This is further confirmed by Wilmington's request for a deficiency judgment in ¶3(M) of the Complaint ("Names of defendants claimed to be personally liable for a deficiency…: Mildred Person…"), in its Prayer for Relief, ¶3 ("For a personal deficiency judgment against, Mildred Person…") *See* Exhibit H, ¶ 3(M), and Prayer for Relief.

51. Filing a case to collect a time-barred debt violates the FDCPA. *Manlangit v. FCI Lender Services, Inc.*, No.19-cv-03265, 2020 WL 5570092 (N.D. Ill. September 16,

2020)("Attempting to collect on a time-barred debt is a violation of §§ 1692e and 1692f of the FDCPA which prohibit debt collectors from using unfair, "false, deceptive, or misleading representations or means" in collecting a debt. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1083 (7th Cir. 2013); *Eul v. Transworld Sys.,* No. 15 C 7755, 2017 WL 1178537, at *8 (N.D. Ill. Mar. 30, 2017) ("In this Circuit, filing a time-barred debt collection lawsuit, in and of itself, violates this prohibition because such a suit falsely implies that the debt collector has legal recourse to collect the debt.").

52. A cause of action accrues when facts exist that authorize one party to maintain an action against another; thus the moment a creditor may legally demand payment the statute of limitations begins to run, because at that moment a cause of action has actually accrued. *Beynon Bldg. Corp. v. National Guardian Life Ins. Co.* 118 Ill. App. 3d 754, 762 (2d Dist. 1983), citing *Mazur v. Stein*, 314 Ill. App. 529, 534 (1st Dist. 1942). "Even when an obligation is payable by installments and the statute of limitations runs against each installment when due, an action to determine the existence of the right under the contract is distinct as regards the commencement of the period of limitations, and the statute of limitations begins to run when the party first has the power to make the demand." *Id.* citing to *Brehm v. Sargent & Lundy*, 66 Ill. App. 3d 472, 474 (1st Dist. 1978). Likewise, a plaintiff cannot delay running of the statute of limitations by postponing the time of demand upon the proper party. *Luminall Paints, Inc. v. La Salle Nat'l Bank*, 220 Ill. App. 3d 796, 801-802 (1st Dist. 1991), citing *Brehm* , 66 Ill. App. 3d 472.

53. The five-year period following the March 3, 2008 default expired before the Collection Complaint was filed on February 2, 2021.

54. Even assuming arguendo that the ten-year statute of limitations for causes of action based on written contracts prescribed in 735 ILCS 5/13-206 applies (it doesn't), the

ten-year period following Plaintiff's March 3, 2008 default expired before the Foreclosure Complaint was filed on February 2, 2021.

### F. Deceptive and Unfair Acts of Defendants:

55. On February 22, 2021, Diaz Anselmo, at the direction of Statebridge and Wilmington, filed the Foreclosure Complaint against Plaintiff seeking to foreclose the Open-End Mortgage against the Property even though Wilmington's payment rights in the HELOC were not enforceable.

56. Statebridge also directed Diaz Anselmo to assert rights in a deficiency claim against Plaintiff.

57. Diaz Anselmo did, indeed, assert a deficiency claim against Plaintiff.

58. Diaz Anselmo also seeks attorneys' fees and costs in the Foreclosure Complaint. Complaint at ¶3(O).

59. Diaz Anselmo continues to charge Plaintiff attorneys' fees for prosecution of the Foreclosure Case, Statebridge continues to assign the attorneys' fees charged by Diaz Anselmo to Plaintiff's account, and Diaz Anselmo is continuing to try and collect these amounts – which Diaz Anselmo and Statebridge knew or should have known were invalid and were not owed by Plaintiff.

60. On May 10, 2021, Statebridge provided a Periodic Statement (the "May 2021 Periodic Statement") to Plaintiff. A true and correct copy of the May 2021 Periodic Statement is attached hereto as Exhibit J.

61. The May 2021 Periodic Statement reflects that Plaintiff made a "partial payment" of $141.94, which is a false statement.

11

62. The May 2021 Periodic Statement alleges that Plaintiff is 2,507 days delinquent on her payments, which is a false statement. The period between March 3, 2008 – the date of Plaintiffs last payment to May 10, 2021 is 4,827 days, or 13 years, 2 months and 18 days.

63. The May 2021 Periodic Statement reflects that Plaintiff owes $29,609.86 on her Loan, which is also a false statement.

64. The May 2021 Periodic Statement states "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home."

65. Wilmington directed the initiation of the Foreclosure Complaint without basis in law or fact and without being the true holder of the HELOC. Even if Wilmington is the true holder of the HELOC and Open-End Mortgage, Wilmington has failed to provide any evidence whatsoever that it is the holder of the HELOC or Open-End Mortgage, or that it has the right to enforce payment thereon. Further, Wilmington, knowing that Plaintiff has not made a payment on the HELOC since, at least, March 3, 2008 caused Statebridge and Diaz Anselmo to commence the foreclosure proceedings knowing that its enforcement of the alleged debt was unenforceable, and unlawful.

G. **Damage to Plaintiff**

66. Upon being served with the Foreclosure Complaint, Plaintiff suffered great emotional distress. She became angry and was constantly frustrated because she believed that her Loan was not enforceable due to the passage of time and that the Loan could no longer be collected.

67. Plaintiff was embarrassed that a public record of the Foreclosure Case now exists and fears that her family, neighbors, friends and colleagues would learn of the filing and hold her in low esteem.

68. The Foreclosure Case is a public record, a scarlet letter if you will, that cannot be erased and will forever haunt Plaintiff in her future endeavors.

69. During the weeks following the service of the Foreclosure Case, Plaintiff suffered many sleepless nights, became agitated, could not focus on work and could not enjoy the normal comforts of life.

70. Finally, in April 2021, Plaintiff put aside her anxiety, fear and embarrassment and sought the advice of attorneys.

71. Plaintiff retained counsel to represent her in the Foreclosure Case and to help her seek redress by filing the instant action.

72. Plaintiff's counsel was retained to appear in the Foreclosure Case and file a motion to dismiss the case as barred by the statute of limitations.

73. Plaintiff has incurred court costs and filing fees, attorneys fees and costs to consult with her, to review her records regarding the Loan and to have her attorneys appear and defend the Foreclosure Case.

74. Additionally, Plaintiff has incurred filing fees and attorneys' fees and costs to consult with attorneys and to have those attorneys bring the instant action.

75. The actions of Defendants have further caused damage to Plaintiff's credit.

76. The actions of Defendants have caused Plaintiff to incur actual damages including time off work, travel expenses to and from her attorney's office, filing fees, attorneys' fees to defend the Foreclosure Case, and the preparation and prosecution of this action.

## COUNT I

**(Violations of the FDCPA Against Statebridge and Diaz Anselmo)**

77. Plaintiff restates and incorporates all the above paragraphs as if fully stated herein.

78. 15 U.S.C. 1692e provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of–

(A) the character, amount, or legal status of any debt; . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

79. By the May 2021 Periodic Statement, Statebridge made false, deceptive and misleading representations in connection with the collection of a debt, in violation of §1692e, by making false and deceptive statements to Plaintiff by, at least:

    a. Misrepresenting the amount of the debt owed by Plaintiff in violation of §1692e(2) of the FDCPA;

    b. Misrepresenting the legal status of the debt owed by Plaintiff in violation of §1692e(2) of the FDCPA;

    c. Threatening to take action that cannot legally be taken in violation of §1692e(5) of the FDCPA;

14

  d. Misrepresenting to Plaintiff that she might lose her home in violation of §1692e(10) of the FDCPA.

80. By filing the Foreclosure Complaint, Diaz Anselmo made false, deceptive and misleading representations in connection with the collection of a debt, in violation of §1692e, by making false and deceptive statements to Plaintiff by, at least:

  a. Misrepresenting the amount of the debt owed by Plaintiff in violation of §1692e(2) of the FDCPA;

  b. Misrepresenting the legal status of the debt owed by Plaintiff in violation of §1692e(2) of the FDCPA;

  c. Misrepresenting to Plaintiff that they could obtain a money judgment against Plaintiff, including attorney's fees, in violation of 1692e(5) of the FDCPA. These are actions that cannot legally be taken against a borrower on a debt which is barred by the statute of limitations;

  d. Misrepresenting to Plaintiff that she was required to pay Diaz Anselmo's attorneys' fees in the Foreclosure Case in violation of §1692e(10) of the FDCPA;

  e. Misrepresenting to Plaintiff that she would have a deficiency judgment against her at the conclusion of the Foreclosure Case when such a remedy is precluded by Plaintiff's Bankruptcy discharge in violation of §1692e(10) of the FDCPA;

  f. Misrepresenting that the date of default was June 29, 2014 in violation of **§**1692e(10) of the FDCPA. The Plaintiff had in fact defaulted prior to the filing of the Foreclosure Case in March of 2008.

81. 15 U.S.C. 1692f provides in relevant part that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt."

82. Diaz Anselmo violated §1692f of the FDCPA by attempting to collect the Loan by filing the Foreclosure Case when collection of the Loan was barred by the statute of limitations.

83. Diaz Anselmo violated §1692f of the FDCPA by attempting to collect attorneys' fees that are not owed by Plaintiff.

84. 15 U.S.C. 1692d provides in relevant part that a debt collector, "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt."

85. Statebridge violated §1692d of the FDCPA by threatening Plaintiff vis-à-vis the May 2021 Periodic Statement that failure to pay would result in the "loss of your home" while continuing to make demand for payment from Plaintiff.

86. Diaz Anselmo violated §1692d of the FDCPA by commencing the baseless Foreclosure Case against Plaintiff's Property while continuing to make demand for payment from Plaintiff.

87. Plaintiff suffered actual damages as set forth *infra*.

**WHEREFORE,** the Plaintiff prays for the entry of judgment in his favor and against Statebridge and Diaz Anselmo, as follows:

A. For Statutory damages of up to $1,000.00 for each violation of the FDCPA;

B. For actual damages, all costs and reasonable attorney fees;

C. For all other relief this Court may deem just and proper.

## COUNT TWO

**(Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

88. Plaintiff restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

89. The Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception or fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/1 *et seq*. ("ICFA").

90. 735 ILCS 5/13-205 evince the public policy of Illinois that no person should be sued beyond a period of five years for a contractual obligation that is not a "written contract." At all times herein, Plaintiff was a consumer as that term is defined in the ICFA. 815 ILCS 505/1(e). At all times herein, each Defendant was engaged in trade or commerce as those terms are defined by the ICFA. 815 ILCS 505/1(f).

91. The Defendants engaged in unfair and deceptive acts in its dealings with Plaintiff.

92. Diaz Anselmo dealt with Plaintiff unfairly by filing the Foreclosure Case when such an action was barred by Illinois law and it acted deceptively when it made multiple false statements in the Foreclosure Case and acted in violation of the FDCPA.

93. Statebridge dealt with Plaintiff unfairly by sending false and misleading periodic statements to Plaintiff threatening to dispossess her of her Property if she failed to make payments on an uncollectable debt.

94. Wilmington dealt with Plaintiff unfairly by engaging Statebridge and Diaz Anselmo and directing them to collect a debt beyond the statute of limitations. Wilmington further dealt unfairly with Plaintiff by seeking to enforce a loan that it does not own and has no right to legally enforce.

95. The Defendant's conduct also needlessly caused Plaintiff significant, and permanent economic and non-economic harm.

96. All the needless harms suffered by Plaintiff proximately resulted from the Defendant's unfair and deceptive acts and practices.

97. Plaintiff seeks such economic and non-economic damages as a jury deems reasonable and may award after hearing the evidence in this case.

98. Plaintiff also seeks an award of punitive damages commensurate with the consumer harm inflicted by Defendants on Plaintiff.

99. Plaintiff also requests the Court award her statutory attorney's fees and the costs of the litigation as well.

**WHEREFORE,** the Plaintiff prays for the entry of judgment in his favor and against Wilmington, Statebridge and Diaz Anselmo, as follows:

A. For actual damages;

B. For punitive damages;

C. For all costs and reasonable attorney fees;

D. For all other relief this Court may deem just and proper.

**JURY DEMAND**

100. Plaintiff, Mildred Person, hereby respectfully demands a trial by jury on all claims.

Respectfully Submitted,
/s/ Seth McCormick
Seth McCormick (ARDC # 6309643)
Great Lakes Consumer Law Firm, LLC
73 W. Monroe St., Suite 100
Chicago, IL 60603
(312) 971-6787
seth@glclf.com

*Attorney for Plaintiff*
